In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 16-3472

CAFFERTY, CLOBES, MERIWETHER & SPRENGEL, LLP, on behalf
of itself and all others similarly situated,

*Plaintiff-Appellant,*

*v.*

XO COMMUNICATIONS SERVICES, LLC,

*Defendant-Appellee.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 C 2331 — **Milton I. Shadur**, *Judge*.

---

ARGUED FEBRUARY 7, 2017 — DECIDED MARCH 8, 2017

---

Before BAUER, POSNER, and SYKES, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiff, a law firm, seeks both individual and class relief against XO Communications, a large provider of telecommunications services to business customers, such as the plaintiff, and wholesalers. The plaintiff's contract with XO provided that the contract would be automatically renewed at the end of the customer's current service term "for a similar term and at the same rates" set

forth in the contract. A customer who didn't want to renew was required to so notify XO at least 30 days prior to the expiration date in the contract; if it failed to do so, the contract would renew automatically. The contract also provided that XO would notify the customer of the automatic-renewal feature of the contract (which it did from time to time), thus reminding the customer that if it decided not to renew the contract it would have to so notify XO at least 30 days before expiration. The contract further stated that if the customer terminated the contract after the deadline it would have to pay XO a termination fee based on the revenue that XO would have received from the customer over the remaining months of the contract had it not been terminated prematurely and thus in violation of the contract. XO's monthly invoices contain a prominent reminder of the automatic-renewal feature of the contract.

The plaintiff's contract with XO had an initial term of three years and renewed automatically (that is, upon the end of the contract term, the plaintiff not having terminated) three times. But shortly after the third renewal began the plaintiff reneged because it was moving to a different location, one not serviced by XO. By thus violating the contract the plaintiff owed XO a termination fee.

All this is straightforward, leaving one to wonder how it could give rise to this lawsuit, let alone to this appeal, which complains only about the district judge's denial of leave to the plaintiff to file a third amended complaint, a ruling to which the plaintiff takes violent exception. The multiple complaints in this case alleged breach of contract, violation of Illinois consumer protection statutes, unjust enrichment, and unconscionability, among other things. But the plaintiff

has no case, as all its claims pivot on its contention that XO's monthly reminders of the automatic-renewal feature of the contract should have included, but didn't, the date of the automatic renewal, or that XO should have otherwise notified the plaintiff of the renewal date before the contract renewed. But as the automatic renewal comes at the end of the customer's term of service, it is child's play for the customer to keep track of the deadline (30 days before the end of the term) for declining—without any penalty—to renew the contract. Remember too that the customer receives a monthly reminder that the contract will renew if the customer doesn't terminate it in compliance with its terms—terms that include the deadline that the plaintiff missed.

Its complaint about having to pay a termination fee for violating the contract falls with its challenge to XO's not advising it of the date of the contract's automatic renewal. Because the plaintiff, having failed to keep track of the renewal date, terminated the contract after the contract had been renewed, thereby violating the terms of the contract, it was required to pay the termination fee of some $9,000 (it's paid some, but not all of it), based as we said on the loss to XO of the revenues that the contract would have generated for it had the plaintiff not violated the contract. The contract had been renewed, and thus was in force, because the plaintiff, apparently losing track of its terms, had failed to terminate it before the renewal took effect.

The plaintiff's argument comes down to a baseless assertion that the renewal clause in the contract "assigned responsibility to XO to track customers' renewal dates and to give them fair warning that the window of opportunity to avoid renewal of their Agreements was closing." No, the re-

newal clause doesn't say that and doesn't have to, since every customer is informed that the contract automatically renews at the end of the customer's term of service unless that renewal is cancelled by the customer at least 30 days before the end of the term. The plaintiff's other statutory and common-law claims, all based on its having to pay a termination fee for failing to cancel the contract before the deadline, fail for the same reason.

It's not as if the plaintiff were some hapless consumer bamboozled by a huge company. According to the plaintiff's website (www.caffertyclobes.com/home, visited March 3, 2017), "Cafferty Clobes Meriwether & Sprengel LLP, which has offices in Chicago, Philadelphia, and Ann Arbor, combines the diverse talents of attorneys with a wide range of litigation experience. Since its founding in 1992, the firm has focused on representing plaintiffs, such as investors, employees, consumers and companies, in complex civil litigation throughout the country. The firm and its attorneys have helped recover billions of dollars for the benefit of represented plaintiffs and classes, and in some cases, have secured the reform of corporate practices alleged to be unlawful or abusive. The skill and experience of our attorneys has been recognized on repeated occasions by courts that have appointed these attorneys to leadership positions in complex multidistrict or consolidated litigation." Had this substantial enterprise kept track of the date of its contract with XO (more precisely the date of its latest renewal of the contract), it would not have incurred the modest termination fee that it seeks to recover by this suit.

Of course its real aim, doubtless, was, in the words of its website, to "recover billions of dollars for the benefit of rep-

resented plaintiffs and classes." It can't have brought this suit just to recover a $9,000 termination fee (less, actually, because it hadn't paid the entire fee); it must have hoped that a class would be certified, although a different law firm—Lite DePalma Greenberg, LLC—would be representing the class in the litigation.

Ultimately the district judge dismissed the case and entered judgment for XO. The plaintiff appeals the dismissal, complaining of not having been given an opportunity to be heard. But it had multiple options: it could have filed a motion, expanded its arguments at the hearing, or raised its procedural concerns with the district judge. It complains of the judge's denial of leave to file a third amended complaint. But given the insufficiency of the first and second amended complaints, the denial of leave to file a third is reviewed under the same standard as a dismissal (see *Runnion v. Girl Scouts of Greater Chicago*, 786 F.3d 510, 524 (7th Cir. 2015)), and is therefore affirmed, ending the litigation.